# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

JESSE J. WOODSIDE-FISHER, )
)
    Plaintiff, )
)
v. ) Case No. CIV-14-1244-D
)
T. PULLEY, et al., )
)
    Defendants. )

## REPORT AND RECOMMENDATION

Plaintiff, a detainee[1] appearing *pro se* and *in forma pauperis*, has filed this action pursuant to 42 U.S.C. § 1983. (ECF No. 1.). United States District Judge Timothy D. DeGiusti has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). An initial review of the Complaint has been conducted pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915. Based on that review, it is recommended that this action be summarily **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief may be granted. However, it is recommended that Plaintiff be granted an opportunity to amend his complaint to address the deficiencies discussed below.

---

[1] Plaintiff does not state whether he is detained on pending charges or is incarcerated as a convicted felon. He identifies himself as a "Jim Taliaferro" patient. Complaint, 2 (ECF No. 1:2). He is presumably referring to the Jim Taliaferro Community Mental Health Center that describes itself on its official website as providing "Supported Employment: Specializing in employment supports for individuals with severe mental illness." (accessed Dec. 29, 2014). In any event, whether governed by the Eighth Amendment or the Fourteenth Amendment, the same standards would apply to his claims regarding the conditions of his confinement. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

## I. Background

Plaintiff alleges that his "religious, medical, and civil rights have been and are being violated by the employees and person[n]el in the Jackson County Law Enforcement Center.

Plaintiff names four defendants: "Official T. Pulley," identified as the kitchen supervisor; "Official E. Bridges," identified as the jail administrator; "Official S. Randolph," identified as Jackson County Law Enforcement Center undersheriff; and "Official R. Levick," whom Plaintiff identifies as the sheriff. Complaint, 1-[2a] (ECF No. 1:1-3).

In his three-count complaint, Plaintiff first alleges that his religious and human rights have been violated. Complaint, 3 (ECF No. 1:4). In support of Count I, Plaintiff states only dates on which he wrote the four the four named Defendants about food, religious, and medical issues. Complaint, 3 (ECF No. 1:4). Plaintiff does not list any conduct on the part of these Defendants, aside from being the alleged recipients of Plaintiff's written complaints.

In Count II, Plaintiff alleges that his right to access to the courts has been violated. Complaint, 3 (ECF No. 1:4). As factual support, Plaintiff alleges that he has written grievances that have not been answered, there are no library privileges at the Jackson County Law Enforcement Center, that the Center has told Plaintiff that letters to the district attorney or a judge are not privileged. Complaint, 3 (ECF No 1:4). He

claims that such mail is placed in his property without notice, "therefore hindering my access to the courts." Complaint, 3 (ECF No. 1:4).

In Count III, Plaintiff alleges that his "correspondence rights" have been violated. Complaint, 4 (ECF No. 1:5). He claims that he wrote to the jail administrator about his mail and never received a response back "because they told me that if I sealed my outgoing mail that they (Jackson County Law Enforcement Center) wasn't gonna send my mail out." *Id.* He alleges that he wrote to the jail administrator, the undersheriff, and the sheriff about his mail problems, but got the same reply. *Id.*

## II. DISCUSSION

A district court has an obligation to screen cases for merit under 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Under these provisions, a court shall dismiss the case if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. *See e.g. Buchheit v. Green,* 705 F.3d 1157, 1160 (10th Cir. 2012).

Rule 8(a) of the Federal Rules of Civil Procedure informs the inquiry required when screening a complaint. Rule 8 requires a complaint to set forth a short and plain statement of the grounds for jurisdiction, the claim for relief, and a demand for the relief sought. A pleading must include facts sufficient to provide the opposing party with fair notice of what the claim is and the grounds upon which it rests. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 (2007). A complaint must also contain

sufficient factual allegations to state a claim to relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In applying this standard, the Court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the Plaintiff. *Bryson v. Edmond,* 905 F.2d 1386, 1390 (10th Cir. 1990). Under this standard, the undersigned magistrate judge finds the Complaint to be deficient.

**A. Count I – Medical Care, Diet**

In Count I, Plaintiff complains about the lack of adequate medical care and about the food he is served. With regard to medical care, Plaintiff alleges that he has severe PTSD, heavy stress, anxiety, and high blood pressure, and that in response to his request for medical care he has only received a "muscle relaxer" which "doesn't help at all. Plaintiff also claims that his food trays and lunches contain foreign material and that although he is "not for sure ... I'm assuming that my "Dietary" trays and lunch sandwiches are being tampered with." Complaint, 2 (ECF No. 1:2). He states that he has been forced to "starve or eat due to the fact that there is way too much salt in my food," and surmises that this is being done intentionally because his trays are singled out due to his religious diet (halal). *Id.* Plaintiff claims that he addressed the issue with the "officers" and the jail administrator six or seven times, and each time his tray was

taken and he had to go without food until the next meal. *Id.* He also claims that due to the unsanitary and unsupervised personnel in the kitchen, he "know[s] for a fact that" he has received "uncleaned trays." Complaint, 2 (ECF No. 1:2).

Thus, it appears that Plaintiff is alleging a lack of adequate medical care and nutrition—the latter of which he claims is made possible by the fact that his tray is set aside as a special halal meal. It is unclear to the undersigned whether Plaintiff is claiming that his food is being tampered with because it is a religious tray, or whether the fact that it is set aside simply provided the opportunity for someone to tamper with it.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's ban on cruel and unusual punishment if the deliberate indifference constitutes the unnecessary and wanton infliction of pain. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To prevail on an Eighth Amendment claim under 42 U.S.C. § 1983, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. The Supreme Court clarified the standards applicable to a claim that a prison official has been deliberately indifferent to an inmate's medical needs in violation of the Eighth Amendment in *Farmer v. Brennan,* 511 U.S. 825 (1994) and set forth the now familiar two pronged inquiry, comprised of an objective and subjective component. In *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005), the Tenth Circuit Court of Appeals provided a thorough summary of the law applicable to such claims:

> A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The test for constitutional liability of prison officials "involves both an objective and a subjective component."
>
> The prisoner must first produce objective evidence that the deprivation at issue was in fact "sufficiently serious." We have said that a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Where the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second guessing in the guise of an Eighth Amendment claim. Moreover, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm." The substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain."
>
> The subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind. The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference." A prison medical professional who serves "solely ... as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if she "delays or refuses to fulfill that gatekeeper role."

*Id.* at 751 (citations omitted).

With these standards in mind, the undersigned finds that Plaintiff has failed to allege enough facts to support his claim that he was denied adequate medical care or

that his receipt of medical care was unconstitutionally delayed—particularly problematic is Plaintiff's failure to allege that any particular Defendant denied or delayed medical care. Also problematic is Plaintiff's allegation that he did receive treatment in the form of medication. He alleges that the medication is "no help," but a disagreement over the care an inmate receives is not enough to state a claim for denial of adequate medical care.

Plaintiff's claim in Count I regarding his food also fails to satisfy his obligations under Fed. R. Civ. P. 8. As noted above, the allegations are not clear as to the nature of his claim—whether it is an allegation that he has not been provided with an adequate diet, or whether he is alleging that his food is being tampered with *because* it is a religious diet. As with his medical care claim, Plaintiff also fails to identify what role the named Defendants had with regard to the saltiness or contamination of his food. He does state that each of the six or seven times the jail administrator (Defendant Bridges) and other "officers" were told about "the situation," "*they*" took his tray and did not provide food until the next meal. He does not identify "they," or directly allege that the one Defendant mentioned was involved in taking his tray or the decision not to provide another. Neither the nature of Plaintiff's claim in Count I, nor the identity of those who allegedly violated his constitutional rights, is clear enough to give the Defendants fair notice of the claim and the grounds upon which it is based.

Because vicarious liability does not apply in a § 1983 action, "a plaintiff must plead [and demonstrate] that each Government-official defendant, through the official's

own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. at 667. In the case of a supervisory official, "mere knowledge" of a subordinate's unconstitutional actions is not enough to hold the supervisor liable under § 1983 for the subordinate's conduct. *Id.* Thus, without more, the mere denial of a grievance is not "personal participation" sufficient to state a claim against a prison official under 42 U.S.C. § 1983. *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009).

### B. Count II – Access To The Courts

As noted above, Plaintiff's second count alleges that his right to access to the courts have been violated. Complaint, 3 (ECF No. 1:4). He alleges that his grievances have gone unanswered, library privileges are not provided, letters to the district attorney and judge are not privileged mail, and that such mail is placed—without notice—in "your" property. He alleges that these things have combined to deny him access to the courts. *Id.*

The right of access to the courts is a fundamental constitutional right. *Bounds v. Smith,* 430 U.S. 817, 828 (1977). However, an inmate alleging denial of access to the courts must allege an actual injury. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." *Id.* at 356. *Penrod v. Zavaras,* 94 F.3d 1399, 1403 (10th Cir. 1996) (citing *Lewis,* 518 U.S. at 351); *Gee v. Pacheco,* 627 F.3d 1178, 1191 (10th Cir. 2010) ("a prisoner must demonstrate actual injury from interference with his access to the courts—that is, that the prisoner was

frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement").

Plaintiff's allegations simply do not show how he was impeded in his efforts to bring any legal claim. Furthermore, his allegations do not identify who among the named Defendants was involved in the facts he recites. Accordingly, the undersigned finds that his allegations fail to state a claim for denial of access to the courts.

### C. Count III – Correspondence Rights

In his final count, Plaintiff alleges that his "correspondence rights" were violated because "they" would not send out his mail if it was sealed. Complaint, 4 (ECF No 1:5). Plaintiff does not identify the nature of the mail he wished to send.

Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment. *Procunier v. Martinez,* 416 U.S. 396, 408 (1974). *Thornburgh v. Abbott,* 490 U.S. 401, 413–14 (1989), overruled *Martinez* 's standard of review for limitations placed on a prisoner's right to *incoming* mail, but did not overrule *Martinez's* holding pertaining to outgoing mail. The *Thornburgh* Court recognized that "[t]he implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials," *Thornburgh,* 490 U.S. at 413.

Under *Martinez,* limitations on a prisoner's First Amendment rights in his outgoing mail "must further an important or substantial governmental interest unrelated to the suppression of expression [and] … must be no greater than is necessary or

9

essential to the protection of the particular governmental interest involved." *Martinez,* 416 U.S. at 413; *accord Leonard v. Nix,* 55 F.3d 370, 374 (8th Cir. 1995).

A refusal to process *any* mail from a prisoner impermissibly interferes with the addressee's First and Fourteenth Amendment rights. *Martinez,* 416 U.S. at 413. However, Plaintiff himself alleges that the outgoing mail would not be processed only if it were sealed. He does not allege the nature of the correspondence, such as whether it was privileged in some way, but the failure to process sealed, outgoing mail—without more—does not state a claim. Furthermore, Plaintiff uses "they" to describe the actors who refused to send any of his mail. He does identify those to whom he complained, but that alone does not state a claim for denial of his First Amendment right to correspond.

For the above reasons, it is recommended that this action be dismissed. However, as it is possible that some of the deficiencies can be cured through amendment, it is further recommended that Plaintiff's action be dismissed with leave to amend.

### III. RECOMMENDATION

In light of the foregoing, it is hereby recommended that this action be **DISMISSED,** but with **leave to amend**. It is further recommended that Plaintiff's Motion to Appoint Counsel **(ECF No. 6)** be **DENIED**. The Plaintiff is advised of his right to file specific written objections to this Report and Recommendation. 28 U.S.C. § 636; Fed. R. Civ. P. 72. Any such objections must be filed with Clerk of the District Court by

**January 16, 2015.** Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation **DISPOSES OF ALL ISSUES** referred to the undersigned Magistrate Judge in this matter.

**ENTERED** on December 31, 2014.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE